IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Marquisa Walker, on behalf of a minor, | : | Case No. 3:08 CV 1008 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner of Social Security, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

Plaintiff seeks judicial review of a final decision of the Commissioner denying her application for Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U. S. C. §§ 1381 and 405(g). Pending are Briefs on the Merits filed by the parties (Docket Nos. 24 and 29). For the reasons set forth below, the Commissioner's decision is affirmed and the case is dismissed.

## I. PROCEDURAL BACKGROUND

On April 11, 2003, Plaintiff, claimant's mother, applied for SSI on claimant's behalf, alleging that she had been disabled since February 1, 2003 (Tr. 219-220). The application was denied initially and on reconsideration (Tr. 214-217, 209-212). On November 18, 2005, a hearing was held in Toledo, Ohio, at which claimant and Plaintiff, *pro se*, appeared (Tr. 193). On June 5, 2006, Administrative Law Judge (ALJ) Steven J. Neary rendered an adverse decision finding that Plaintiff was not disabled(Tr. 193-200).

Plaintiff requested a hearing on August 2, 2006 (Tr. 189). On November 8, 2006, the Appeals Council granted Plaintiff's request for review, vacated the hearing decision and remanded the case for further proceedings to consider new and material evidence (Tr. 174-176). A hearing was conducted on March 6, 2007, by ALJ Neary (Tr. 326). Claimant, represented by counsel, Loretta Wiley, and Plaintiff appeared and testified. On September 24, 2007, the ALJ rendered an unfavorable decision finding that Plaintiff was not disabled as defined under the Act (Tr. 15-22). The Appeals Council denied Plaintiff's request for review on February 20, 2009, thereby rendering the ALJ's decision the final decision of the Commissioner (Tr. 6-7A).

## II.  FACTUAL BACKGROUND

**1.      The Initial Hearing.**

Plaintiff testified that claimant was eight years of age and in the third grade (Tr. 340-341). Plaintiff thought her daughter was disabled because of her delayed emotional and intellectual development. In her opinion, claimant did not work at the same pace as other students, she did not respond normally, she was aggressive and she fidgeted "a lot" (Tr. 341). Claimant's average grades were the result of her inability to focus (Tr. 342).

Although physically healthy, claimant was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) (Tr. 341, 343). Adderall, a psychostimulant, was prescribed to minimize symptoms exhibited in children with ADHD. Plaintiff claimed that the Adderall provided some relief; however, dyspepsia and cephalgia were side effects (Tr. 341-342). Claimant was also undergoing counseling (Tr. 341).

Claimant liked to play cards and she liked to ride her bicycle (Tr. 343). She was learning how to skate. She had few friends and she did not engage in organized activities (Tr. 344).

**2.     The Remand Hearing.**

At the remand hearing, Plaintiff presented supplemental evidence of claimant's placement in learning disabled classes (Tr. 329). Claimant was enrolled in such classes during the 2006 school year because of her academic struggles (Tr. 330). Her teachers complained that she was not reading at the grade appropriate level and that. she had difficulty with math and spelling. She was delegated to special education classes to improve her reading and increase the pace in reading and spelling.

Plaintiff observed that claimant had marked difficulty concentrating and focusing on completion of tasks so she sought psychological treatment (Tr. 331, 332). Symptoms of ADHD were manifested by uncontrollable behaviors such as talking out of turn and bullying (Tr. 331, 333). When claimant took the psychostimulant, her attitude and behavior improved. Lately, Plaintiff noted that the medication had not been effective as claimant's attitude "was totally off" (Tr. 334). As a consequence, claimant's psychiatrist would increase the dosage of claimant's "meds" when necessary (Tr. 335).

### III.  MEDICAL EVIDENCE

During the 2002 to 2003 school year, claimant's teacher suggested that she needed to improve, *inter alia*, in controlling her emotions, listening and understanding instructions, and reciting her address or telephone number (Tr. 116, 123). On May 8, 2003, the dosage of Plaintiff's medication was adjusted because she snored while asleep or awake (Tr. 84). In October 2003, Plaintiff's functional grade levels were considered a D- in reading, a C- in math and a borderline C/D in written language (Tr. 127). It was noted that she learned at a slower rate. With constant instruction, she improved (Tr. 128). Her ability to communicate with same aged children, her motor/physical functioning and her social functioning abilities were age appropriate (Tr. 129, 130, 131). Claimant was easily distracted and needed redirection to tasks. This was considered a serious detriment

to her academic or social success (Tr. 132).

In the meantime, Dr. Jerome Zake, Ph. D., conducted a disability assessment on June 17, 2003, during which he noted that claimant was alert, but fidgety. Claimant exhibited normal expressions of feelings. Her cognitive reasoning skills were borderline, and she had difficulty concentrating. Dr. Zake diagnosed Plaintiff with ADHD, oppositional defiant disorder (ODD), borderline intellectual functioning, and serious symptoms or serious impairment in social, occupational, or school functioning (Tr. 100-103).

On November 12, 2003, Roger H. Avery, M. S. Ed., administered the (1) Bender Visual Motor Gestalt Test (BVMGT), the Vineland Adaptive Behavior Scales (VABS), (2) Wechsler Intelligence Scale for Children (WISC-IV), and (3) Wide Rage Achievement Test (WRAT) (Tr. 135). At the time of the tests, claimant was six years of age. Although the results from the BVMGT rendered a standard score for a five to six year old, it was indicative of a minor with confused order, distortions, integrations and perseveration.

Plaintiff completed the VABS test for claimant. The results showed age equivalence for a communication domain of four to nine, daily living skill's domain of four to five and socialization domain of five to eight. Claimant had a maladaptive behavior domain in the significant level. The examiner opined that the reduced score was attributable primarily due to uncooperative behavior (Tr. 146).

The results from the WISC-IV test placed claimant within the borderline range for intellectual functioning (Tr. 138). The borderline range findings were commensurate with Mr. Avery's clinical impressions (Tr. 139).

The WRAT results showed that claimant's reading, spelling and arithmetic skills were the grade equivalent to kindergarten (Tr. 142). Mr. Roger's overall diagnostic impressions confirmed the diagnosis of ADHD and borderline intellectual functioning. He also noted the presence of parent-child relational problems (Tr. 140).

4

In March 2004, claimant underwent a psychiatric evaluation and was diagnosed with ADHD, ODD and moderate symptoms or moderate difficulty in social, occupational, or school functioning (Tr. 160).

On April 12, 2005, and April 16, 2005, Sarah Hildebrand, M. A., and Janis Woodworth, Ph. D, evaluated claimant using the (1) Child Behavior Checklist, (2) Teacher's Report Form, (3) WISC and (4) Wechsler Individual Achievement Test (WIAT).  Claimant's scores on the WISC were within the borderline to low average range for overall cognitive abilities.  Her verbal comprehension score was within the low average range and above those of approximately 13% of her peers (Tr. 153).  Her ability to sustain attention, concentration and exert mental control was in the borderline range (Tr. 154).  Claimant performed in the borderline range in overall reading skills (Tr. 154).  Claimant's oral language skills fell within the average range.  She displayed difficulties that are greater than average in areas of somatic complaints, social problems, thought problems, attention problems and aggressive behaviors compared to female peers of the same age (Tr. 155).  The evaluators contended that claimant had moderate symptoms or moderate difficulty in social, occupational, or school functioning.  The diagnoses of ADHD, ODD and borderline intellectual functioning were affirmed (Tr. 156).

Claimant's grades during the 2005 to 2006, her third grade school year, showed improvement in reading, spelling, mathematics and art.  Claimant's grades in social studies were relatively constant as were her grades in science and health (Tr. 298).  Her reading level for the year rose to 2.83.  Her current reading level was 3.10 (Tr. 299).

Commencing in March 2006, claimant underwent a series of therapeutic intervention counseling sessions with Stephanie Speck, M. Ed., (Tr. 307).  In April 2006, she addressed ideas for managing bullying situations (Tr. 306).  Claimant's attitude interfered with a successful intervention during the May 2006 session (Tr. 305). Claimant showed some improvement during the session on June 13, 2006.  She expressed plans to clean and follow through with her chores (Tr. 304).  No change was noted during the July 18, 2006 session (Tr. 303).

Claimant responded well to positive reinforcement during the August 23, 2006 session (Tr. 302). Claimant had difficulty engaging in the session conducted on September 12, 2006 (Tr. 301). The dosage of Adderall was doubled in August 2006, in contemplation that it would assist with her behavior at school (Tr. 314). During the October 23, 2006 visit, Dr. Diane Hysell noted that Plaintiff was hyperactive and climbing around (Tr. 313). In October 2006, the dosage of Adderall was increased (Tr. 313).

On May 2, 2006, an evaluation team assessed claimant's progress in the general curriculum, interviewed her, conducted a record review and observed her (Tr. 277, 281). The results from the WISC test showed low average verbal comprehension, low average perceptual reasoning, low average working memory, borderline processing speed and a borderline full scale intelligence quotient (Tr. 279). In the individual achievement tests, claimant's scores revealed a gap of two years when compared to other students in the third grade (Tr. 282). In July 2006, claimant's scaled score on the Ohio Third Grade Achievement Test showed that her level of performance was in the "limited" range (Tr. 300). Considering the instructional implications, in August 2006, the Toledo Public Schools authorized claimant's placement in the learning disabled program (Tr. 276).

During the first grading period of the school year 2006 though 2007, claimant obtained As in reading, language, mathematics, handwriting, physical education and art (Tr. 269). During the second, third and fourth grading periods of the school year 2006 though 2007, claimant's teacher opined that claimant was making adequate progress in communicating effectively, computing effectively and demonstrating good classroom skills (Tr. 266, 272). She even made adequate progress in applying a wide range of strategies to comprehend, interpret, evaluate and appreciate text (Tr. 273). The only objectives that Plaintiff had not made adequate progress with were those that had not been introduced to Claimant (Tr. 272, 273).

## IV. STANDARD OF DISABILITY

An individual under the age of 18 shall be considered disabled for purposes of this title if that individual

6

has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i) (Thomson Reuters/West 2009). A three-step sequential evaluation process is employed to determine whether an individual under 18 is disabled. The SSA will consider (1) whether the child is working; (2) whether the child has a medically determinable severe impairment which is expected to result in death, has lasted or is expected to last for a continuous period of not less than 12 months and, if so, (3) whether the impairment or combination of impairments meets, medically equals, or functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2000) (the "Listings"). 20 C.F.R. § 416.924 (Thomson Reuters/West 2009). The SSA will find an impairment functionally equivalent to a Listing if the child has an extreme limitation in one area of functioning, or a marked limitation in two areas of functioning. 20 C.F.R. § 416.926a(b)(2) (Thomson Reuters/West 2009). For children more than three years of age, the areas of development or functioning that may be addressed in considering functional equivalence are (1) cognition/communication; (2) motor skills; (3) social ability; (4) personal ability; and (5) concentration, persistence or pace. 20 C.F.R. § 416.926a(c)(4) (Thomson Reuters/West 2009). The regulations provide that when standardized tests are used as a measure of functional abilities, a "marked limitation" is a valid score that is two standard deviations or more below the norm for the test. 20 C.F.R. § 416.926a(c)(3) (Thomson Reuters/West 2009).

## V. ALJ'S DETERMINATIONS

Employing the standard of disability, the ALJ considered the testimony presented at the hearing and the medical evidence set forth above and made the following findings:

1. Claimant was born on December 13, 1996; therefore, she is considered to be a child under the age of 18. Claimant had not engaged in substantial gainful activity at any time relevant to the

       decision.

2.    Claimant had severe impairments: ADHD, ODD, borderline intellectual functioning and learning disorders. Claimant did not have an impairment or impairments that met or medically equaled one or more of the listed impairments in 20 C. F. R. Part 404, Subpart P, Regulation No. 4. Claimant did not have an impairment or combination of impairments that functionally equaled the Listing.

3.    Claimant had not been disabled as defined under the Act since March 31, 2003.

(Tr. 15-22).

## VI. STANDARD OF JUDICIAL REVIEW

This Court conducts judicial review over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006). Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (1994) (*citing Richardson v. Perales,* 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied,* 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id*. (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Id*. (*citing Kirk*, *supra*, 667 F.2d at 536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also

supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

## VII. DISCUSSION

Plaintiff/Claimant opines that although the ALJ's decision is patently deficient, he particularly failed to recognize that claimant had a marked limitation in two domains, namely, acquiring and using information and interacting and relating with other. The ALJ conceded that claimant was markedly limited in the domain of interacting and relating with others.

Defendant submits that the ALJ reasonablely concluded that claimant had less than marked limitations in acquiring and using information.

### 1. FUNCTIONAL EQUIVALENCE STANDARD.

Functional equivalence for children is determined if the impairment is of "listing level severity." 20 C. F. R. § 416.926a(d) (Thomson Reuters/West 2009). An impairment(s) is of "listing-level severity" if the claimant has "marked" limitations in two of the domains in paragraph (b)(1) of this section, or an "extreme" limitation in one domain. 20 C. F. R. § 416.926a(d) (Thomson Reuters/West 2009). A "marked" limitation in a domain attaches when the claimant's impairment(s) interferes seriously with his or her ability to independently initiate, sustain, or complete activities. 20 C. F. R. § 416.926a(e) (2)(i)(Thomson Reuters/West 2009). "Marked" limitations also mean a limitation that is "more than moderate" but "less than extreme." 20 C. F. R. § 416.926a(e) (2)(i)(Thomson Reuters/West 2009). It is the equivalent of the functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C. F. R. § 416.926a(e) (2)(i)(Thomson Reuters/West 2009).

An "extreme" limitation in a domain interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C. F. R. § 416.926a(e) (3)(i)(Thomson Reuters/West 2009). Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the

interactive and cumulative effects of your impairment(s) limit several activities. 20 C. F. R. § 416.926a(e) (3)(i)(Thomson Reuters/West 2009). "Extreme" limitation also means a limitation that is "more than marked." 20 C. F. R. § 416.926a(e) (3)(i)(Thomson Reuters/West 2009). "Extreme" limitation is the rating attributed worst limitations. 20 C. F. R. § 416.926a(e) (3)(i)(Thomson Reuters/West 2009). "Extreme limitation" does not necessarily mean a total lack or loss of ability to function. 20 C. F. R. § 416.926a(e) (3)(i)(Thomson Reuters/West 2009). It is the equivalent of the functioning expected to find on standardized testing with scores that are at least three standard deviations below the mean. 20 C. F. R. § 416.926a(e) (3)(i)(Thomson Reuters/West 2009)

### 2. ACQUIRING AND USING INFORMATION DOMAIN.

In this domain, the fact finder must consider how well the claimant acquires or learns information, and how well the claimant uses the information learned. 20 C. F. R. § 416.926a(g)(Thomson Reuters/West 2009). School-age children (age six to attainment of age 12), are deemed able to learn to read, write, and do math, and discuss history and science. 20 C. F. R. § 416.926a(g)(2) (iv) (Thomson Reuters/West 2009). These skills will be needed to demonstrate in an academic situation what the claimant has learned, e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. 20 C. F. R. § 416.926a(g)(2)(iv) (Thomson Reuters/West 2009). These skills are also needed in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). 20 C. F. R. § 416.926a(g)(2)(iv) (Thomson Reuters/West 2009). The claimant should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others. 20 C. F. R. § 416.926a(g)(2)(iv) (Thomson Reuters/West 2009).

Examples of limited functioning in acquiring information include a failure to demonstrate understanding

of words about space, size, or time; e.g., in/under, big/little, morning/night; the claimant cannot rhyme words or the sounds in words; the claimant has difficulty recalling important things learned in school yesterday; the claimant has difficulty solving mathematics questions or computing arithmetic answers and the claimant talks only in short, simple sentences and has difficulty explaining what he or she means. 20 C. F. R. § 416.926a(g)(3) (Thomson Reuters/West 2009). As in any case, these limitations must result from a medically determinable impairment(s). 20 C. F. R. § 416.926a(g)(3) (Thomson Reuters/West 2009).

### 3. CLAIMANT'S ARGUMENT THAT SHE HAS A MARKED LIMITATION IN ACQUIRING AND USING INFORMATION.

The ALJ determined that based on the evidence, claimant's limitations caused by her impairments resulted in less than marked limitations in the domain of acquiring and using information. In support, he assessed claimant's school records, Plaintiff's testimony, psychological testing and state agency review (Tr. 20, 21).

The experts concur that claimant's cognitive skills are within the low average to borderline range (Tr. 102, 139, 145, 153, 154, 156). Mr. Avery diagnosed claimant with a learning disorder that did not meet the criteria of any specific disorder (Tr. 131). During kindergarten, claimant's teacher opined that she satisfactorily learned to understand likenesses, opposites, identify capital and lower case letters, print her first and last name, recognize colors, shapes and days of the week (Tr. 102, 116). Claimant participated in social studies, science, music and physical education (Tr. 116). In the first grade, claimant learned and retained things at a slower rate than her fellow classmates (Tr. 128). Yet she attained superior grades in reading, language, mathematics, social studies, science/health and spelling (Tr. 269).

During the 2005 to 2006 school year, claimant improved her grades in reading, language, mathematics, spelling and art. Her improved grades, according to her teacher, were the results of modified work practices while medicated (Tr. 298). Her reading and math levels increased during the year (Tr. 299).

In April 2006, claimant's verbal comprehension, perceptual reasoning and working memory were deemed in the low average range while her processing speed and full scale intelligence quotient was borderline (Tr. 279). The function report prepared by Plaintiff on August 14, 2006, reflected that claimant's progress in learning was limited; however, she could "read simple," write in longhand, spell three to four letter words, add and subtract numbers over 10, understand money and tell time (Tr. 241). Claimant's achievement level in the third grade showed a gap of two years on average (Tr. 282). In the progress report prepared by her teacher during the 2006-2007 school year, claimant was making adequate progress in learning to communicate, strategizing to comprehend and interpret text (Tr. 272, 273).

Claimant's score on the Ohio Third Grade Achievement Test showed that her reading ability was limited and she needed additional work in the area of reading. Her score was only two standard deviations below the mean (Tr. 300).

The ALJ did not designate a "rationale" for his findings; however, the decision is replete with instances in which the ALJ acknowledged that claimant successfully used the acquired information. Despite labels of borderline cognitive skills, claimant has made academic progress. This progress cannot be ignored in determining that she can process and use information given to her. The Magistrate must affirm the ALJ's finding that claimant had a less than marked limitation in the domain of acquiring and using information as there is substantial evidence to support this conclusion.

## VIII.  CONCLUSION

For these reasons, the decision of the Commissioner is affirmed and the case is dismissed.

**IT IS SO ORDERED.**

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date:   August 14, 2009

12